UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DAHAN ENTERPRISES, INC.**  **CIVIL ACTION**

**VERSUS**  **No. 23-2505**

**CERTAIN UNDERWRITERS**  **SECTION I**
**AT LLOYD'S, LONDON**

## ORDER & REASONS

Before the Court is a motion[1] to remand the above-captioned matter to the 24th Judicial District Court for the Parish of Jefferson, Louisiana, filed by plaintiff Dahan Enterprises, Inc. ("Dahan"). Defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy No. PXA0001774-01 ("Lloyd's"), opposes the motion.[2] Dahan has filed a reply.[3] For the reasons that follow, the Court grants the motion.

### I. BACKGROUND

This case arises from an insurance dispute over damage resulting from Hurricane Ida. According to Dahan, Lloyd's issued an insurance policy providing commercial property insurance coverage for multiple properties owned by Dahan.[4] The policy period covered March 1, 2021 to March 1, 2022.[5] Dahan alleges that, on or about August 29, 2021, it suffered property damage as a result of Hurricane Ida.[6]

---

[1] R. Doc. No. 9.
[2] R. Doc. No. 13.
[3] R. Doc. No. 17.
[4] R. Doc. No. 1-2, ¶¶ 4–5; *see also* R. Doc. No. 1-3 (insurance policy).
[5] R. Doc. No. 1-3, at 4.
[6] R. Doc. No. 1-2, ¶ 6.

Dahan further alleges that it submitted a claim and proof of loss to Lloyd's, but that "Lloyd's arbitrarily and capriciously denied and/or underpaid the claim."[7]

Dahan originally filed the instant lawsuit in a Louisiana state court, alleging that Lloyd's is liable for "all benefits due and owing under the Policy, and for all damages, including compensatory and consequential, caused by Lloyd's bad faith breach of its contractual obligations."[8] Lloyd's subsequently removed this matter to this Court on the basis of diversity jurisdiction.[9] Dahan now moves to remand, arguing that Lloyd's has failed to meet its burden of establishing diversity jurisdiction.[10]

## II. STANDARD OF LAW

Pursuant to the federal removal statute, a civil action brought in state court may be removed to the federal district court embracing the place where such action is pending so long as the federal courts have original jurisdiction over that action. 28 U.S.C. § 1441(a). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy [exceeds $75,000] and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)).

The "party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy

---

[7] R. Doc. No. 1-2, ¶ 8.
[8] *Id.*
[9] R. Doc. No. 1 (notice of removal).
[10] R. Doc. No. 9-1, at 1.

2

exceeds $75,000." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). The removing party must "distinctly and affirmatively allege the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (cleaned up). "To determine whether jurisdiction is present for removal, [courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. And Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any 'doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.'" *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## III.  ANALYSIS

### a.  Diversity Jurisdiction

As the parties agree[11] and as the U.S. Fifth Circuit Court of Appeals has made clear, Lloyd's is "not an insurance company but rather a self-regulating entity which operates and controls an insurance market." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "The members or investors who collectively make up Lloyd's are called 'Names' and they are the individuals and corporations who finance the insurance market and ultimately insure risks." *Id.* at 858. "Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment." *Id.* "Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular

---

[11] *Compare* R. Doc. No. 9, at 3–5 (setting forth the typical jurisdictional analysis for Lloyd's insurers) *with* R. Doc. No. 13, at 3–4 (same).

policy that the Name has subscribed to as an underwriter . . . Typically hundreds of Names will subscribe to a single policy[.]" *Id.*

"In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a 'Syndicate' which will in turn subscribe to policies on behalf of all Names in the Syndicate." *Corfield*, 355 F.3d at 858. A Syndicate is "a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy[,]" but it "bears no liability for the risk on a Lloyd's policy." *Id.* Instead, all liability is borne "by the individual Names who belong to the various Syndicates that have subscribed to a policy." *Id.* "In sum, while an insured receives a Lloyd's 'policy' of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume." *Id.* at 859.

Courts within the Fifth Circuit, including this Court, have held that Lloyd's syndicates should be treated as unincorporated associations and, therefore, pursuant to the Supreme Court's decision in *Carden v. Arkoma Associates*, 494 U.S. 185, 195–96 (1990), "the citizenship of each member of an unincorporated association . . . must be taken into account in determining diversity jurisdiction." *La. Rest. Ass'n, Inc. v. Certain Underwriters at Lloyds, London*, 573 F. Supp. 3d 1054, 1060 (E.D. La. Nov. 23, 2021) (Ashe, J.). Accordingly, "with respect to the requirement of complete diversity for subject matter jurisdiction based on diversity, '[t]he majority of courts that have addressed this issue have found that each Name must be diverse.'" *Green*

*Coast Enters., LLC v. Certain Underwriters at Lloyd's*, No. 22-973, 2022 WL 2208206, at *3 (E.D. La. June 21, 2022) (Africk, J.) (quoting *La. Rest. Ass'n, Inc.*, 573 F. Supp. 3d at 1060).

Although the parties agree that this is "the traditional state of play,"[12] they disagree about how the analysis should proceed in the instant case. Lloyd's notice of removal states that this Court has jurisdiction because "there is complete diversity of citizenship as between Dahan and [Lloyd's]" and the "matter in controversy exceeds the sum of $75,000."[13] Specifically, the notice states that, as a Louisiana corporation with its principal place of business in Jefferson Parish, Louisiana, Dahan is a citizen of Louisiana for purposes of diversity jurisdiction.[14] The notice also states that the Underwriters at Lloyd's are "citizens of a foreign state."[15] This is because "Lloyd's Syndicate 2001 subscribes to 100% [of] risk insured under Policy No. PXA0001774-01" and "Syndicate 2001 consists of a single name, Amlin Corporate Member Ltd.," which is "organized under the laws of England and Wales," and "maintains its principal place of business in London, England."[16]

According to Dahan, Lloyd's has not met its burden of establishing complete diversity of citizenship because the relevant insurance policy contains two separate subscribing syndicates—Syndicate 2001 and Syndicate 5000—but the notice of removal fails to mention Syndicate 5000 and does not identify the citizenship of its

---

[12] R. Doc. No. 13, at 2.
[13] R. Doc. No. 1, ¶ 1.
[14] *Id.* ¶ 3.
[15] *Id.* ¶ 4.
[16] *Id.*

5

Names.[17] Dahan also argues that Lloyd's failed to establish the amount in controversy as to each defendant as the notice of removal is silent as to the amount in controversy as to Syndicate 5000.[18]

In response, Lloyd's argues that the policy in question is comprised of "two distinct and individually numbered 'agreements,' each addressing separate risks: one for commercial property and the other for equipment breakdown."[19] Lloyd's notes that "Syndicate 2001 subscribes to 100 percent of the commercial property coverage[,]" while "Syndicate 5000 subscribes to 100% of the Equipment Breakdown coverage."[20] Because Lloyd's views "the *risk* insured and at issue" to be property coverage only and not equipment breakdown coverage, Lloyd's argues that Dahan has only sued Amlin—the single name underlying Syndicate 2001.[21] Alternatively, Lloyd's argues that, even if Syndicate 5000's names are defendants, "their presence does not require remand because they are nominal defendants whose citizenship is irrelevant and [whose] consent to removal is not required."[22] Finally, Lloyd's requests leave to amend its notice of removal if necessary.[23]

The central question before the Court is whether Dahan brought claims against all underwriters subscribing to the policy at issue or only brought claims against Syndicate 2001. Lloyd's acknowledges that, in most instances, courts

---

[17] R. Doc. No. 9-1, at 5.
[18] *Id.* at 7.
[19] R. Doc. No. 13, at 2.
[20] *Id.* at 6–7.
[21] *Id.* at 7–11.
[22] *Id.* at 11–14.
[23] *Id.* at 14–15.

6

assessing their diversity jurisdiction must consider the citizenship of all Names subscribing to the relevant policy.[24] However, Lloyd's argues that this case is distinguishable because it involves two syndicates subscribing to separate risks within one policy.[25] In Lloyd's view, "[t]he whole purpose of evaluating the citizenship of (and amount in controversy as to) each name is 'because each name bears its own proportionate liability under the applicable insurance policy.'"[26] Accordingly, Lloyd's states that "[i]t is illogical to evaluate the citizenship of a syndicate subscribing to a policy that is not a defendant and has no interest in this suit."[27]

Dahan's petition names as defendant "Certain Underwriters at Lloyd's, London."[28] Lloyd's argues that, since "'Certain Underwriters' is nothing more than a naming convention for the investors participating in the Lloyd's insurance marketplace," the Court "must analyze the rest of the allegations to ascertain who Dahan is suing."[29] Lloyd's emphasizes that the petition alleges that "the Properties sustained damage as a result of Hurricane Ida[,]" that Lloyd's "denied and/or underpaid the claim," and that Lloyd's is "liable . . . for all benefits due and owing under the Policy, and for all damages . . . caused by [Underwriters'] bad faith breach of its contractual obligations under the Policy."[30] According to Lloyd's, "the only party that could be liable for 'all benefits due and owing under the Policy'" is the sole

---

[24] *Id.* at 10.
[25] *Id.*
[26] *Id.* at 11 (quoting *La. Rest. Ass'n, Inc.*, 573 F. Supp. 3d at 1062).
[27] *Id.*
[28] R. Doc. No. 1-2, ¶ 2.
[29] R. Doc. No. 13, at 8.
[30] *Id.* at 9 (quoting R. Doc. No. 1-2, ¶¶ 6–8).

member of Syndicate 2001 "because it insured 100 percent of property coverage under the Policy."[31]

Lloyd's also stresses that the petition is devoid of any language suggesting that Dahan is alleging a cause of action based on equipment breakdown coverage under the policy.[32] Pursuant to the policy, equipment breakdown coverage is triggered by a "direct physical loss to Covered Property caused by or resulting from a 'breakdown' to 'covered equipment.'"[33] According to Lloyd's, Dahan's petition alleges only that the properties sustained damage as a result of Hurricane Ida, not a breakdown to covered equipment.[34]

Dahan responds that its petition "is intentionally broad and was drafted to include all claims available to Dahan."[35] Dahan also suggests that other courts have found that plaintiffs "sued all names subscribing to the Lloyd's policy" where the plaintiff sued "Certain Underwriters at Lloyd's, London."[36] However, in the case Dahan cites for this proposition, the state-court petition actually named "Certain Underwriters at Lloyds, London . . . Subscribing to Policy Number CR0315027."[37] By contrast, Dahan's petition names as defendant "Certain Underwriters at Lloyd's, London" and only later references the policy number in its allegations.[38] Accordingly,

---

[31] *Id.* (quoting R. Doc. No. 1-2, ¶ 8).
[32] *Id.*
[33] *Id.* at 9–10 (quoting R. Doc. No. 13-1, at 47–48).
[34] *Id.* at 10.
[35] R. Doc. No. 17, at 1.
[36] *Id.* at 1–2 (citing *La. Rest. Ass'n, Inc.*, 573 F. Supp. 3d at 1062-63).
[37] *La. Rest. Ass'n v. Certain Underwriters at Lloyds, London*, E.D. La. Case No. 21-1718, R. Doc. No. 1-5 (plaintiff's state-court petition).
[38] *See generally* R. Doc. No. 1-2.

Lloyd's is correct that the Court must examine the language of the petition to determine the relevant defendants.

As Dahan points out,[39] the policy's equipment breakdown coverage applies to mechanical and electrical failures of "electrical or mechanical equipment that is used in the generation, transmission, or utilization of energy."[40] The policy also contains "Equipment Breakdown Coverage Extensions" which extend coverage to "Perishable Goods," "Expediting Expenses," "Utility Interruption," "Drying Out," "Pollution Clean Up and Removal," "Data and Media," and "Demolition and Increased Cost of Construction."[41] Plaintiff's repair estimates, which Lloyd's attached to its notice of removal, further establish that Dahan's claims might plausibly encompass claims covered by the equipment breakdown policy. Those repair estimates suggest that Dahan's properties suffered damage to appliances, heat and air conditioning, electrical components, and light fixtures.[42] At this stage of the proceeding, the Court will not interpret the parties' policy to determine whether the type of damage to equipment alleged is in fact covered by the equipment breakdown coverage portion of the policy. Accordingly, the Court is unwilling to read Dahan's petition as narrowly as Lloyd's urges.

Lloyd's notice of removal states that "Lloyd's Syndicate 2001 subscribes to 100% of risk insured under Policy No. PXA0001774-01."[43] The notice of removal fails

---

[39] R. Doc. No. 17, at 2.
[40] R. Doc. No. 1-3 (insurance policy), at 46–47.
[41] *Id.* at 47–49.
[42] *See generally* R. Doc. No. 1-4.
[43] R. Doc. No. 1, ¶ 5.

to mention Syndicate 5000 or its Name—Travelers—at all. In fact, Lloyd's has still not apprised the Court of Travelers' citizenship. Lloyd's also has not established that the amount in controversy exceeds $75,000 with respect to Travelers. *See e.g., Cmty. Bancorp v. Certain Underwriters at Lloyd's London*, No. 22-814, 2022 WL 17345772, at *3 (M.D. La. Nov. 30, 2022) ("Defendants must show that the amount in controversy is likely met as to each Name."). The Court therefore lacks sufficient information to assess its diversity jurisdiction.

### b. Procedural Defect: The Rule of Unanimity

The Fifth Circuit has interpreted 28 U.S.C. § 1446(a) to require that all properly served defendants join in a notice of removal. *See Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Ortiz v. Young*, 431 F. App'x 306, 307 (5th Cir. 2011); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262–63 (5th Cir. 1988). "[T]here must be some timely filed written indication from each served defendant . . . that it has actually consented to [removal]." *Getty Oil*, 841 F.2d at 1262 n.11. "[A]ll served defendants must join in the petition [for removal] no later than thirty days from the day on which the first defendant was served." *Id.* at 1263.

However, nominal parties need not join in the removal petition. *Farias v. Bexar Cnty. Bd. of Trs.*, 925 F.2d 866, 871 (5th Cir. 1991). "To establish that non-removing parties are nominal parties, the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." *Id.* (cleaned up). "The question for the

10

district court is whether it would be fair to the plaintiff to enter a judgment in the absence of the nonremoving parties." *Id.* at 871 n.4.

Dahan contends that Lloyd's failed to obtain written consent to removal from all joined defendants since the notice of removal does not indicate whether Syndicate 5000 consents to removal.[44] Lloyd's responds that, even if Syndicate 5000's Names are defendants, their presence does not require remand because they are nominal defendants.[45] However, at this stage of the proceedings and for the reasons already given, Lloyd's has not convinced this Court that there is "no possibility that [Dahan] would be able to establish a cause of action against [Syndicate 5000] in state court." *Farias*, 925 F.2d at 871. Rather, based on the broad language of the petition and the policy, there is some possibility Dahan could establish a cause of action against Syndicate 5000 pursuant to the equipment breakdown coverage in the policy. Again, that is a question of contract interpretation that will be addressed by the state court. For the same reasons, the Court is not persuaded that it could afford full relief to Dahan without the Syndicate 5000 Names. Accordingly, Syndicate 5000 is not a nominal defendant.

### c. Leave to Amend the Notice of Removal

Alternatively, Lloyd's requests leave to amend its notice of removal to allege that Syndicate 5000 is a nominal party that must be disregarded.[46] "A removal petition may be amended freely within the thirty day period set forth in 1446(b)."

---

[44] R. Doc. No. 9-1, at 6–7.
[45] R. Doc. No. 13, at 11–12.
[46] R. Doc. No. 13, at 14–15.

11

*Alford v. Chevron U.S.A. Inc.*, No. 13-5457, 2014 WL 37600, at *6 (E.D. La. Jan. 6, 2014) (Vance, J.) (quotation and citations omitted). "But the only avenue for amendment after the thirty-day period has run is 28 U.S.C. § 1653, which provides that '[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *Id.*

Although § 1653 is to be construed broadly to avoid dismissal of actions on technical grounds, *see Whitmere v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000), it "may be used only to set out more specifically a jurisdictional basis for removal that has already been stated, albeit imperfectly, in the original notice." *Alford*, 2014 WL 37600, at *6. "Section 1653 may not be used to cure procedural defects of the removal, such as the failure to obtain the consent of a codefendant or the failure to explain why such consent was unnecessary." *Id.* Accordingly, Lloyd's may not amend its notice of removal to explain its failure to obtain Syndicate 5000's consent. *See id.*

## IV. CONCLUSION

In deciding the issues presented by this motion, "the Court has ben guided by the Fifth Circuit's admonition that 'any doubt as to the propriety of removal should be resolved in favor of remand.'" *Alford*, 2014 WL 37600, at *8 (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)). Accordingly,

**IT IS ORDERED** that the motion to remand is **GRANTED** and Lloyd's request to amend the notice of removal is **DENIED**.

**IT IS FURTHER ORDERED** that the above-captioned matter is **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson, Louisiana for further proceedings.

New Orleans, Louisiana, October 27, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**